A03A1398. THE STATE v. HOWARD et al.

(592 SE2d 88)

SMITH, Chief Judge.

This appeal involves the validity under the Fourth Amendment of the search of the car that Ralph Dorsey Howard was driving and in which his wife Sharon Howard and Ronnie Lee Williams had been passengers. The trial court granted appellees' motions to suppress evidence, which included cocaine and a pistol found in a duffel bag on the floorboard of the car, and the State appeals. We find that impoundment of the vehicle was reasonable, and an inventory search is permitted in conjunction with impoundment. We also find that the search was incident to Howard's lawful arrest. We therefore conclude that the trial court erred in granting the motions to suppress.

The record shows that Ralph Howard ("Howard") was driving a black Corvette on Highway 121 in Charlton County when the car struck and killed a deer. Because the dashboard instruments indicated a lack of oil pressure he immediately pulled over and asked his wife to call his brother, a former Georgia state trooper, and instruct him to call a tow truck. A passing volunteer firefighter informed a Charlton County deputy sheriff about the disabled car, and the deputy proceeded to the scene. When he arrived, he observed a tow truck and three individuals, who were standing near the disabled Corvette, which was in the process of being loaded onto the tow truck.

The deputy immediately told the tow truck driver to stop loading the Corvette. He then asked whether a report was needed of the accident and, if so, he would have to know who the driver was and see proof of insurance. Howard identified himself as the driver, said he did need a report, and gave the deputy a Georgia driver's license. When the officer called his dispatcher to have a computer check run on the license, it "came back suspended" because of insurance cancellation. When asked for his insurance card, Howard did not furnish one, but he handed the officer a paper bearing a toll-free number and showing a price quote for insurance on the Corvette.[1] Finding this insufficient proof of insurance, the deputy placed Howard under

---

[1] At trial, Howard testified he did not know if he had received an insurance card, but he knew that the number on the letter he gave the deputy could have been used to verify coverage had the officer attempted to do so. The deputy testified that after Howard was taken to the jail, he heard Howard say that he did not have insurance.

arrest for not having proof of insurance and driving without a valid license. The deputy then instructed the tow truck driver to tow the Corvette to the sheriff's office.

The deputy testified at the hearing on the motions that the sheriff's department had a policy providing that every time a vehicle was impounded an inventory search must be done and that he "was going to do an inventory on the vehicle to have it impounded for not having insurance." According to the deputy, the sheriff's office usually allowed the wrecker company to keep the impounded car, but because the deputy could not complete his search at the roadside, he had the car towed to the sheriff's office.

The car's two passengers were not arrested at that time. They rode to the sheriff's office with Howard's brother, who had arrived at the scene of the accident. The car was towed to the sheriff's office as well, and Howard was taken to the jail in the patrol car. At the sheriff's office, the deputy completed the search of Howard's car. A blue duffel bag was found on the passenger's side of the floorboard, and in the bag was a brown paper sack. Inside the sack was a plastic bag wrapped in a white towel and containing a white powdery substance that appeared to be cocaine. In the bottom of the bag he found a pistol in a holster.

During the search, the two passengers were standing nearby, and Howard's wife "kept coming back to the vehicle." She first told the deputy that "she had some naked photos in a bag" in the car and that she did not want the deputies to see them. Once the duffel bag was found, she placed her hand on the paper sack, saying it was her sandwich and asking if she could carry it with her. The completed search revealed no photographs or sandwiches. After the contraband was found, the deputy locked the car and placed the passengers under arrest. Officers then sought and obtained a search warrant for the car. While executing the warrant, an aerosol can also was found in the blue bag. Inside the can's false bottom deputies found two plastic baggies containing a white powder.

On appeal from the grant of a motion to suppress, we must construe the evidence most favorably to uphold the findings and judgment of the trial court. We adopt the trial court's findings as to credibility of witnesses and disputed facts unless they are clearly erroneous. *State v. Peirce*, 257 Ga. App. 623-624 (571 SE2d 826) (2002). In this case, however, neither the brief three-sentence order granting the motions to suppress nor the transcript of the hearing on the motions discloses the trial court's rationale or the ground on which the motions were granted. No material facts were disputed, however, and a trial court's application of law to undisputed facts is reviewed de novo. We review the ruling to ensure that it had a substantial basis. Id. at 624.

The State contends that the impoundment was reasonable and the inventory search was therefore lawful. They argue that the trial court therefore erred in granting the motions to suppress. We agree.

Under Georgia law, two alternatives exist for determining whether a particular search of a vehicle was lawful. *State v. Heredia*, 252 Ga. App. 89, 91 (3) (555 SE2d 91) (2001). Police officers may perform an inventory search of a car in preparation for impounding it. Using this approach, an impoundment need not be absolutely necessary, so long as it was reasonable under the circumstances. If the impoundment was reasonable, the search was lawful. *Gaston v. State*, 257 Ga. App. 480, 483 (571 SE2d 477) (2002). See also *Williams v. State*, 204 Ga. App. 372, 374 (419 SE2d 351) (1992). The ultimate test for the validity of the police officer's conduct is whether, under the circumstances then confronting the officer, his conduct was reasonable within the meaning of the Fourth Amendment. *State v. Bell*, 259 Ga. App. 328, 330 (577 SE2d 39) (2003). Alternatively, officers may search a car incident to a lawful arrest of its occupant. See, e.g., *Vega v. State*, 236 Ga. App. 319 (512 SE2d 65) (1999).

In this case neither the brief three-sentence order granting the motions to suppress nor the transcript of the hearing on the motions discloses the ground on which the motions were granted. Appellees' argument focuses on showing that the trial court properly granted the motions because an inventory search was not reasonable under the circumstances. See, e.g., *Fortson v. State*, 262 Ga. 3, 4 (1) (412 SE2d 833) (1992).

The deputy testified that he was performing an inventory search prior to impounding Howard's car. In *State v. Lowe*, 224 Ga. App. 228 (480 SE2d 611) (1997), we found impoundment unreasonable when the driver was arrested on a misdemeanor offense totally unrelated to his vehicle. The defendant was not removed from his truck but was arrested as he approached it while it was legally and safely parked on private property. Id. at 229-230. See also *Bell*, supra (driver arrested for violating municipal ordinance unrelated to vehicle and car parked on private property). Unlike the situation in *Lowe* and *Bell*, however, Howard was arrested on charges directly related to his car, which was disabled on the side of a public road. Although Howard had summoned a tow truck and the truck was present at the scene when the deputy arrived, no evidence was presented showing that Howard actually did have insurance. As the State points out, "no one would argue that uninsured motor vehicles should be allowed to travel the roadways." See OCGA § 40-6-206 (d).

Further, the deputy observed "some minor body damage on the front" and "some fluid on the highway where something was leaking from underneath" the car. But the extent of the damage to the Corvette and whether it was capable of being driven were not shown.

Under these circumstances, we will not second-guess the officer's decision to impound the Corvette.

Moreover, the officer testified at the hearing on the motions to suppress that his intention was to impound the car under the policy set forth in the Charlton County Sheriff's Department Manual of General Orders and Directives, which provides that "when the driver of a vehicle has been *arrested,* the vehicle may be towed and impounded." (Emphasis supplied.) Under both Georgia law and the Charlton County Manual of General Orders and Directives the search also was clearly lawful as a search incident to Howard's arrest.

It is undisputed in this case that Howard was arrested, and Howard does not contest the validity of that arrest. Once arrested, he was placed in the back of the patrol car. Under *New York v. Belton,* 453 U. S. 454 (101 SC 2860, 69 LE2d 768) (1981), in a search incident to an arrest, police officers have authority to search "the entire passenger compartment of the automobile and any closed containers therein. [Cits.]" (Punctuation omitted.) *Vega,* supra at 320. In *Belton,*

> [t]he Supreme Court held that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. This is true even after the arrestees are no longer in it. . . . In numerous subsequent cases, this court has relied upon *Belton* to reach the same conclusion in similar circumstances.

(Citations and punctuation omitted.) *Scoggins v. State,* 248 Ga. App. 1, 2 (545 SE2d 19) (2001). The decisive factor in determining whether a search incident to an arrest is valid is "whether the arrestee was, at the time of his arrest, a recent occupant of the automobile, not whether the automobile and its contents were in his immediate control at the time of the search." (Citations and emphasis omitted.) Id. at 3. At the time of Howard's arrest, by his own admission he was "a recent occupant of the automobile." Id. Here, as in *Scoggins,* the search was also valid "as an incident to a lawful custodial arrest of a person who had recently occupied the vehicle that was searched." (Citations and punctuation omitted.) Id.

Because impoundment was reasonable and the search also was performed incident to Howard's lawful arrest, the trial court did not have a substantial basis for granting appellees' motions to suppress. The trial court's ruling must therefore be reversed.

*Judgment reversed. Miller, J., concurs. Ruffin, P. J., concurs specially.*

RUFFIN, Presiding Judge, concurring specially.

Unlike the majority, I do not believe the impoundment of Howard's car was reasonable. In *Gaston v. State*,[2] the defendant argued impoundment was unreasonable because the arresting officers could have called his aunt to pick up the car rather than having it towed. This Court disagreed, concluding "that impoundment was reasonable because it was after 2:00 a.m. and the car was in the roadway."[3] Here, however, there is no evidence that the Corvette was blocking the roadway. Rather, the evidence shows that the car was on the side of the road. And there were several people present at the scene who arguably could have driven the car.[4] Thus, I find this case distinguishable from *Gaston*.

In addition, I am troubled by the sheriff's policy of impounding all cars. According to the deputy who testified, he "made the decision to have [the car] towed because [that is the department's written] policy." The deputy further testified that the department has "a policy that states anytime [they] tow a vehicle for impound, [they] have to do an inventory on it." In my view, such policy, which precludes any inquiry into the reasonableness of the impoundment, violates the Fourth Amendment.[5]

Nonetheless, I agree with the result reached by the majority. As noted in the majority opinion, the search of the car was permitted as an incident of Howard's arrest.[6] And, given this independent basis for the search, I agree that the trial court erred in granting Howard's motions to suppress.

DECIDED NOVEMBER 18, 2003 —
RECONSIDERATIONS DENIED DECEMBER 15, 2003 — ■

*Richard E. Currie, District Attorney, Alexander J. Markowich, Assistant District Attorney*, for appellant.

*Lane & Crowe, Robert L. Crowe, Alan D. Tucker, George L. Hoyt, Jr.*, for appellees.

---

[2] 257 Ga. App. 480 (571 SE2d 477) (2002).

[3] Id. at 483 (2).

[4] Contrary to the majority's suggestion, there is no evidence that the car was not driveable. The deputy described the damage to the car as "minor," and he admittedly did not ask whether the car could be driven.

[5] See *State v. Sims*, 240 Ga. App. 391, 393 (523 SE2d 619) (1999) (department policy requiring officers to "secure any residence with an open door" would violate Fourth Amendment principles).

[6] See *Vega v. State*, 236 Ga. App. 319, 320 (512 SE2d 65) (1999).